# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

COREY HENLEY,                          )
                                       )
              Plaintiff,               )
                                       )
v.                                     )       Case No.: 5:11-cv-03922-JHH-SGC
                                       )
BYERS, et. al.,                        )
                                       )
              Defendants.              )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Corey Henley ("Plaintiff"), filed this *pro se* action pursuant to 42 U.S.C. § 1983, alleging he was deprived of rights, privileges, or immunities afforded him under the Constitution or laws of the United States of America during his incarceration at the St. Clair Correctional Facility in Springville, Alabama. Plaintiff names as defendants the Alabama Department of Corrections, Correctional Officer Byers, Correctional Officer Bailey, Correctional Officer MacMillan, and Correctional Officer Jerome Gray. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(2), the Complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## CASE HISTORY

On September 9, 2012, the magistrate judge to whom this action was previously assigned entered an order for special report directing copies of the Complaint be forwarded to Defendants Byers, Bailey, MacMillan, and Gray and requesting such defendants file a special report addressing Plaintiff's factual allegations. The parties were advised, if appropriate, a special report might be considered a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil

Procedure.  On December 6, 2012, Defendants Byers, Gray, and MacMillan filed a special report accompanied by affidavits and copies of certain institutional records pertaining to Plaintiff and the events made the basis of his claims. (Doc. 20).  Defendant Bailey, then retired from the Department of Corrections, had not been served, so he had not waived service or filed a special report.  Plaintiff submitted a response to the special report on May 7, 2013.  (Doc. 25).

Defendant Bailey was ultimately located and waived service of process.  On October 25, 2013, a second order for special report was entered, directing Defendant Bailey to file a special report addressing Plaintiff's factual allegations.  Defendant Bailey filed a special report on December 23, 2013. (Doc. 33).

On January 1, 2014, the parties were notified the special reports would be construed as motions for summary judgment, and Plaintiff was notified  he would have twenty days to further respond to such motions by filing affidavits or other material if he chose. (Doc. 34).  Plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).

This matter is now before the undersigned on the special reports (Docs. 20 and 33) construed as motions for summary judgment, and Plaintiff's response thereto. (Doc. 25).

## SUMMARY JUDGMENT STANDARD

Because the special reports filed by Defendants Byers, Gray, MacMillan, and Bailey are being considered motions for summary judgment, the undersigned must determine whether the moving parties are entitled to judgment as a matter of law.  Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Federal Rule of Civil Procedure 56.*  In making that assessment, a court must view the evidence

in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is on the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc*., 929 F.2d 604 (11th Cir. 1991).  Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp.*, 477 U.S. 317; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. 317; *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted].  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

## PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff is an inmate in the custody of the Alabama Department of Corrections and is presently housed at the Limestone Correctional Facility in Harvest, Alabama. (Doc. 1, p. 5).  His Complaint concerns events which occurred while he was housed at the St. Clair County Correctional Facility, where he began serving a twenty-year robbery sentence in April of 2009.  (*Id.* at p. 6).

3

On September 3, 2010, Plaintiff was transferred to the Jefferson County Jail to facilitate his testimony in the capital murder trial of Shaunisty Lowe[1]. (*Id.*). While housed in the jail, prior to testifying, Plaintiff was violently assaulted by another inmate. (*Id.*). Plaintiff later learned the inmate who attacked him was a friend of Lowe, against whom Plaintiff was scheduled to testify. (*Id.* at p. 7). Plaintiff also learned the attack had been arranged by Lowe, who knew Plaintiff was at the jail to testify against him. (*Id.*). Plaintiff was treated for his injuries and escorted to a different cell block in general population but was subsequently given protective custody status and placed in a single man cell. (*Id.*).

Prior to the trial, Plaintiff spoke with the prosecutor and expressed fears for his safety because there was a great deal of media coverage of the trial. (*Id.*). The prosecutor told Plaintiff not to worry because the judge had ordered the media not to identify any of the witnesses. (*Id.*). On September 13, 2010, Plaintiff testified against Lowe. During the trial, Plaintiff also testified about his injuries and explained how they had been orchestrated by Lowe to prevent Plaintiff from testifying. (*Id.*). Following Plaintiff's testimony, the court, on the prosecution's motion, ordered the Jefferson County Sheriff's Office to place Plaintiff in protective custody status and take special precautions to ensure his safety. (*Id.*). Plaintiff suffered no further injuries while at the Jefferson County Jail. (*Id.* at p. 8).

On September 23, 2010, Plaintiff was transferred back to the St. Clair Correctional Facility. (*Id.*). Although Plaintiff was still in protective custody status, the transporting officers failed to so inform the staff at the St. Clair Correctional Facility. (*Id.*). As a result, Plaintiff was released back into general population status. (*Id.*). Plaintiff first reported to the infirmary for a body chart then

---

[1] Plaintiff states Lowe was facing nine counts of capital murder.

4

was heading to the segregation property room to retrieve his stored property.  (*Id.*).  Plaintiff was stopped by a fellow inmate, who warned Plaintiff his name and photograph had been published and broadcast in the local news media.  (*Id.*).  According to this inmate, not only did inmates at St. Clair know about Plaintiff's testimony, but Lowe had many friends and relatives in that prison.  (*Id.*).  The inmate warned Plaintiff he was in imminent danger.  (*Id.*).

Plaintiff immediately went to the segregation unit and reported this threat to Defendants Byers and MacMillan.  (*Id.*).  Plaintiff explained he had just testified in a high-profile murder case, his name and photograph had been reported on television and in newspapers, the other inmates were now labeling him "a snitch," threats were already made, warnings were issued, and his life was in immediate danger.  (*Id.*).  Defendant Byers responded she had seen the news broadcasts and Plaintiff's concerns were valid, but she could not provide him with any protection.  (*Id.*).  She advised Plaintiff to speak with the on-duty shift commander.  (*Id.* at p. 9).  Defendant MacMillan did not respond at all, and neither Defendant MacMillan nor Defendant Byers took any action to help Plaintiff.  (*Id.*).

Plaintiff immediately went to the shift commander's office and spoke with the acting commander, Defendant Bailey, who was getting ready to leave work for the day.  (*Id.*).  Plaintiff explained the situation to Defendant Bailey and stated he feared going back to his assigned dorm because his life was in danger.  (*Id.*).  Defendant Bailey stated he could not move Plaintiff to another dorm due to a new policy on bed changes.  (*Id.*).  Plaintiff countered he was not seeking a bed change but was requesting protective custody status.  (*Id.*).  Defendant Bailey responded he could not change Plaintiff's custody status.  (*Id.*).  Defendant Bailey, appearing to be impatient and unconcerned, told

5

Plaintiff he would have to stay in his assigned dorm for the night and ordered him to return to his dorm, L-1. (*Id.*).

Plaintiff feared for his life and was growing increasingly apprehensive about being in the general population. (*Id.*). He returned to his assigned dorm for the night, and as he was unpacking, the other inmates called him a snitch, glaring at him, and made other derogatory and hostile remarks. (*Id.* at p. 10). Plaintiff, growing increasingly fearful of another assault, went to another dorm, M-2, in an attempt to leave a dangerous situation but was pursued by a group of inmates. (*Id.*).

As Plaintiff walked into dorm M-2, he was attacked from behind by inmate Larry Lowe, a cousin of Shaunisty Lowe, against whom Plaintiff had testified. (*Id.*). Six other inmates joined inmate Larry Lowe, dragged Plaintiff into a nearby cell, and brutally beat Plaintiff to the point of unconsciousness. (*Id.*). Other inmates reported the attack to corrections officers. (*Id.*). When the officers arrived, they found Plaintiff locked inside the cell where the attack occurred, unresponsive. (*Id.*). The officers transported Plaintiff to the infirmary. (*Id.* at p. 11). Plaintiff suffered a concussion, knots all over his head, a bloody nose, two black eyes, a broken tooth, and injuries to his back. (*Id.* at p. 10). A body chart was prepared, but the medical personnel failed to document the full extent of his injuries and rendered very little treatment. (*Id.* at p. 11). In spite of Plaintiff's complaints of dizziness and the large knots on his head, the medical staff did not perform any brain scans, administer any pain medications, or address his broken tooth. (*Id.*).

After the assault, Plaintiff spoke with other corrections officers and explained the situation. (*Id.*). He was then placed into a single man isolation cell and segregated from other inmates at all times for his protection. (*Id.*). His injuries took months to heal, and he is still plagued by back pain and psychological distress.

## DEFENDANTS' SPECIAL REPORTS

Defendants Byers, MacMillan, Gray, and Bailey deny Plaintiff ever raised his fears and safety concerns with them.

Defendant Byers submitted an affidavit in which she denies seeing or speaking with Plaintiff on the date of the incident. (Doc. 20, Ex. E). Defendant Byers states the only way Plaintiff could have spoken to her would have been if she had cleared him back into segregation, which she did not do. Defendant Byers further states she would not have been able to place Plaintiff in the segregation unit without orders from a supervisor. (*Id.*).

Defendant MacMillan testifies Plaintiff never attempted to get a supervisor on the date in question and further states Plaintiff never told him he was in fear for his life. (Doc. 20, Ex. F).

Defendant Gray states in his affidavit he was not at work on September 23, 2010 because it was his day off. (Doc. 20, Ex. G).

Defendant Bailey, who retired from the Alabama Department of Corrections on October 31, 2010, testifies he has no recollection of Plaintiff and, therefore, has no recollection as to whether Plaintiff informed him of a threat to Plaintiff's safety. (Doc. 33, Ex. J). Defendant Bailey further testifies if Plaintiff had informed him of a threat to his safety, he would have followed his normal procedure for handing potential threats by initiating an investigation, validating the threat, and placing Plaintiff in a single cell for his protection. (*Id.*). Defendant Bailey denies dismissing Plaintiff's threat because his shift was ending, and states although he does not recall this incident, had he been informed of a threat soon before he was scheduled to leave, he would have made certain the incoming shift commander was aware of the threat. (*Id.*).

The special report filed by Defendants Byers, Gray, and MacMillan sets forth the following statement of facts:

> On September 23, 2010, Officers at St. Clair found Plaintiff locked inside cell M2-36 with bumps and bruises to the head. (See Ex. A, Ex. B). An investigation was conducted, and officers believed that the assault was the result of Plaintiff testifying at the trial of the cousin of an inmate incarcerated at St. Clair, Larry Lowe. (See Ex. A, B, C). Officers escorted Plaintiff to the infirmary where his injuries were considered minor and treated. (See Ex. B, D). Hearings were conducted following the incident and five St. Clair inmates received disciplinaries. (Ex. H). Inmate Larry Lowe was found not guilty of any prison violations based on testimony provided by Plaintiff. (Ex. H, pp. 26-28).

(Doc. 20, p. 4).

Included among the exhibits is a copy of an incident report concerning the attack, which reads, in pertinent part:

> After further investigation it was revealed Inmate Correy (sic) Henley was coaxed into M-2 by Terrell Penick (fat Mac) B/M 212410 using a newspaper article that stated, Inmate Henley had testified in a murder case. Once inside M-2, Inmate Henley was attacked at the top of the steps, pushed down and into the cell at the bottom. Inmate Henley was chocked and beaten (unconscious). Inmate Henley was locked in the cell by the attackers for approx. 30 Mins. Inmate Henley stated that he remembers Inmate Cortez Seay (Chico) B/M 244019 getting in his face and stating, "we're gonna kill you" to Inmate Henley. Inmate Henley stated that he remembers Inmate Larry Lowe standing directly behind him before he was pushed down the steps....

 (Doc. 20, Ex. C).

Also included is a copy of Plaintiff's medical records.  (Doc. 20, Ex. D).  The body chart indicates Plaintiff reported "somebody pushed me from the back... I guess he hit me a couple times in the face and I guess I went out for a few minutes."  (*Id.* at p. 2)*.*  The chart notes the injuries were minor and no longer bleeding and documents the following: a small abrasion on the right shoulder, a small contusion on the left cheek with minor swelling, discoloration and a small abrasion on the

8

left eye, and a small abrasion on the left ear.  (*Id.*).  The treatment plan included pain medication and

ice packs as needed, as well as wound checks and dressing changes.  (*Id.*).  The medical records also

include two health service request forms submitted by Plaintiff.  In the first, submitted on October

3, 2010, Plaintiff complained he was seeing white flashes in his left eye and was concerned, but the

record reflects he did not show up for the appointment.  (*Id.* at p. 5).  In the second, dated October

23, 2010, Plaintiff requested medical care for his tooth, which was broken during the assault, and

was scheduled for and received treatment.  (*Id.* at pp. 9-10).

## PLAINTIFF'S RESPONSE

Plaintiff submitted an affidavit with his response to the special reports, reiterating he did

speak with Defendants Byers, MacMillan, and Bailey on September 23, 2010 upon his return to the

St. Clair Correctional Facility.  (Doc. 25).  Plaintiff testifies he specifically informed Defendants

Byers, MacMillan, and Bailey his life was in danger and relayed to them he had been told he would

be attacked if he went back into general population. (Doc. 25, Ex. A, p. 1).

Plaintiff does not dispute he was placed into general population and not assigned to

segregation but explains he saw Defendants Byers and MacMillan when he went into the property

room, which is in the segregation unit, to retrieve his belongings upon his return. It was then he

explained the situation to them and asked to be placed into protective custody, but they simply told

him to see the shift supervisor.  Plaintiff also reiterates he spoke with Defendant Bailey, conveyed

his fears and the threats and warnings he had received, and asked to be placed in protective custody,

but complains Defendant Bailey took no actions to protect him.  Plaintiff concedes Defendant Gray

was not at work on the date of the incident and, within the body of his response, moves to dismiss

Defendant Gray from this action.[2]  (Doc. 25, p. 5).

## DISCUSSION

### I.    Defendant Gray

As Plaintiff has conceded Defendant Gray was not present on the date of the incident and

moved to dismiss Defendant Gray from this action, the undersigned finds the motion for summary

Judgment as to Defendant Gray is due to be granted, and the claims against Defendant Gray are due

to be dismissed with prejudice.

### II.    Sovereign Immunity

It is well established the Eleventh Amendment to the United States Constitution bars 42

U.S.C. § 1983 claims against the state or an agency of the state.  *See Pennhurst State Sch. & Hosp.*

*v. Halderman*, 465 U.S. 89, 100 (1984).  As the Supreme Court has stated:

> [T]here can be no doubt . . . that suit against the State and its Board of Corrections
> is barred by the Eleventh Amendment, unless Alabama has consented to the filing of
> such a suit. *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ford Motor Co. v. Department
> of Treasury*, 323 U.S. 459 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292
> (1937).  Respondents do not contend that Alabama has consented to this suit, and it
> appears that no consent could be given under Art. I, sec. 14, of the Alabama
> Constitution, which provides that "the State of Alabama shall never be made a
> defendant in any court of law or equity."

*Alabama v. Pugh*, 438 U.S. at 782.  Accordingly, Plaintiff cannot maintain a § 1983 action against

the Alabama Department of Corrections, and it is due to be dismissed from this action.

Likewise, lawsuits against a state official in his or her official capacity are suits against the

state when "the state is the real, substantial party in interest."  *Pennhurst State Sch. & Hosp.*, 465

---

[2] Plaintiff wishes to have Defendant Gray designated as a material witness. The undersigned
makes no such designation at this time.

U.S. at 101.  Although Eleventh Amendment immunity protects state officials from suits for money damages, actions against a state official for prospective injunctive relief are outside the protection offered by the Eleventh Amendment.  *Id*. at 102-03; *see Carr v. City of Florence*, 916 F.2d 1521, 1524 n.2 ( 11th Cir. 1990).  Therefore, Plaintiff's claims against Defendants Byers, MacMillan, and Bailey in their official capacities for monetary relief are due to be dismissed with prejudice.  The remainder of this report and recommendation will address Plaintiff's claims against Defendants Byers, MacMillan, and Bailey in their individual capacities.

## III.   <u>Failure to Protect</u>

For purposes of summary judgment the undersigned accepts as true Plaintiff's testimony he had been warned he was in danger upon his return to the St. Clair Correctional Facility; he spoke with Defendants Byers, Bailey, and MacMillan and conveyed to them his fear for his safety; and Defendants Byers, Bailey, and MacMillan failed to take any precautionary measures to protect him from an attack by other inmates.  Plaintiff argues it was obvious he was in danger, he made the defendants aware of this danger, and they were deliberately indifferent to his concerns by taking no steps to investigate or otherwise attempt to ensure his safety.

The Eighth Amendment's prohibition on cruel and unusual punishment imposes upon institutional officials the duty to "'take reasonable measures to guarantee the safety of the inmates'" in their custody. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (*quoting Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  However, not every injury suffered by an inmate "translates into constitutional liability for prison officials responsible for [the inmate's] safety." *Farmer*, 511 U.S. at 834; *see also Zatler v. Wainwright*, 802 F.2d 394, 400 (11th Cir. 1986).

11

"In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (*quoting Wright v. El Paso County Jail*, 642 F.2d 134, 136 (5th Cir. 1981). Indeed, deliberate indifference requires "a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. It is only when institutional officials' deliberate indifference to a known danger or risk exposes an inmate to objectively, "sufficiently serious" harm that a constitutional violation occurs. *Farmer*, 511 U.S. at 834 (*quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.").

A danger or risk is "known" only if the institutional official is both "aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he . . . draw[s] th[at] inference." *Farmer*, 511 U.S. at 837.  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Rodriguez v. Sec'y for Dep't of Corrs.*, 508 F.3d 611, 617 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at 842) (quotation marks omitted).  "[A]n official's failure to alleviate a significant risk that he should have perceived, but did not," is not sufficient to establish liability on the part of the official. *Farmer*, 511 U.S. at 838.  Furthermore, "the known risk of injury must be a 'strong likelihood, rather than a mere possibility.'" *Edwards v. Gilbert*, 867 F.2d 1271,

1276 (11th Cir. 1989) (*quoting State Bank of St. Charles v. Camic*, 712F.2d 1140, 1146 (7th Cir. 1983)).

Once it is established an institutional official knew of a substantial danger or risk to an inmate, it must then be shown the official "disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner." *Rodriguez*, 508 F.3d at 617 (citing Farmer, 511 U.S. at 829, 837, 844) "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842.

Thus, to survive summary judgment, a plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013) (quoting *Carter v. Galloway,* 352 F.3d 1346, 1349 (11th Cir. 2003)).

Turning to the instant case, the undersigned must construe the facts in a light most favorable to Plaintiff: Plaintiff, an inmate at the St. Clair Correctional Facility, testified in a high profile murder case.  He was attacked by people associated with the criminal defendant prior to giving his testimony.  Immediately upon Plaintiff's return to the St. Clair Correctional Facility, he learned inmates there were aware he had testified in the trial, friends and relatives of the criminal defendant against whom he testified were among the jail population, and he was in imminent danger because threats had been made against him.  Plaintiff conveyed this information first to Defendants Byers and MacMillan.  Defendant Byers agreed Plaintiff's concerns were valid but took no actions to help him other than advising him to speak with the on-duty shift commander.  Defendant MacMillan did

13

nothing.  Plaintiff then told Defendant Bailey about his concerns, stated he was afraid to go back to his bed in the general population, and requested to invoke protective custody.  Defendant Bailey did not address Plaintiff's concerns, took no steps to provide him with protection, and ordered him to return to his assigned dorm in the general population. Shortly thereafter Plaintiff was attacked and beaten unconscious by a group of inmates that included the cousin of the criminal defendant against whom Plaintiff had testified.  A subsequent investigation of the assault revealed it was in retaliation for Plaintiff's trial testimony.

Accepting these facts as true, the undersigned first finds a jury could reasonably infer Plaintiff had a well-founded basis for his fear and did, in fact, face a substantial risk of serious harm. Plaintiff had already been attacked once as a result of his involvement in the criminal case and received a specific warning the criminal defendant had friends and relatives in the St. Clair Correctional Facility who were out to get him.  *See Rodriguez,* 508 F.3d at 617 n. 12 (risk of harm sufficiently substantial where plaintiff learned his former gang members wanted to kill him, members had strong presence at jail, and plaintiff received death threats).

Second, a reasonable jury could also find Defendants Byers, MacMillan, and Bailey actually *knew* Plaintiff faced a substantial risk of serious harm.  Although Defendants Byers, MacMillan, and Bailey dispute Plaintiff's version of the events, it is well established that assessing the credibility of the allegations made by a plaintiff or defendant is beyond the scope of a trial court's ruling on a motion for summary judgment. *See*, *e.g.*, *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 255 (1986); *see also, Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1986). Further, a reasonable jury could find that, after acquiring the knowledge of the risk, the failure of Defendants Byers,

MacMillan, and Baileys to make any attempt or take any action to minimize that risk was objectively unreasonable.

Finally, as to causation, the question is whether Defendants Byers, MacMillan, and Bailey were "in a position to take steps that could have averted the stabbing incident ... but, through [deliberate] indifference, failed to do so." *Rodriguez,* 508 F.3d at 22 (citing *Williams*, 689 F.2d at 1384).   A reasonable jury could infer Defendants Byers, MacMillan, and Bailey could have placed Plaintiff into protective custody while the threat was investigated  or reported the threats to a supervisor and ensured such steps were taken, and their failure to do so resulted in the attack on Plaintiff.

In sum, the facts presented by Plaintiff and Defendants Byers, MacMillan, and Bailey show a genuine dispute exists between their respective versions of the material facts in connection with the September 23, 2010 incident, and there exist questions for the jury. *See, Rodriguez,* 508 F.3d at 621-22 (concluding a jury question existed as to defendant's subjective knowledge of a substantial risk of serious harm to plaintiff).   Accordingly, the motions for summary judgment as to Plaintiff's Eighth Amendment failure-to-protect claims against Defendants Byers, MacMillan, and Bailey are due to be denied.

## IV.    <u>Qualified Immunity</u>

Defendants Byers, MacMillan, and Bailey also argue they are entitled to qualified immunity. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation."  *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If a constitutional right would have been violated under the plaintiff's version of the facts, "the next,

sequential step is to ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

First, Plaintiff's version of the facts establishes a constitutional violation.  The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer,* 511 U.S. at 833; *see also*, *Rodriguez, supra; Zatler v. Wainwright*, 802 F.2d at 400 (inmates have a constitutional right to be protected ... from physical assault by other inmates.").  Second, as can be seen from the long line of cases on this issue, the duty of an officer to protect inmates in their care from assault by other inmates had been clearly established for years prior to the incident the subject of this proceeding.  As such, the motions for summary judgment on the basis of qualified immunity are also due to be denied.

## V.    **Deliberate Indifference to Serious Medical Needs**

Although the Complaint appeared to attempt to raise a claim of deliberate indifference to serious medical needs based on Plaintiff's dissatisfaction with the medical treatment he received after the assault, Plaintiff does not allege any of the named defendants were involved in his medical care, nor does he name any specific defendants who allegedly violated his constitutional rights[3] with regard to his medical care.

---

[3] It should be noted it is only deliberate indifference to serious medical needs which is actionable under 42 U.S.C. § 1983. *See Estelle v. Gamble*, 429 U.S. 97 (1976).  Mere negligence is insufficient to support a constitutional claim, *see Fielder v. Brossard*, 590 F.2d 105 (5th Cir. 1979), as is an accidental or inadvertent failure to provide medical care or negligent diagnosis or treatment of a medical condition. *See Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980).  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner," *Estelle*, 429 U.S. at 106 (1976), and a mere difference of opinion between an inmate and the institution's medical staff as to treatment and diagnosis alone will not give rise to a cause of action under the Eighth Amendment.  *Id..* at 106-08.

While Plaintiff initially named nurse Jane Doe as a defendant, his subsequent motion to dismiss her as a defendant was granted (Doc. 12), and Plaintiff has not moved to amend the Complaint to name a proper party.  Plaintiff's allegations unnamed "medical personnel" failed to document the full extent of his injuries on the body chart and then subsequently failed to perform a brain scan, administer sufficient pain medications, or address his broken tooth are insufficient to state a claim.  (Doc. 1, p. 11).  It is well settled there is no provision in the federal statutes or the Federal Rules of Civil Procedure for the use of fictitious parties, *see Lubin v. Sybedon Corporation*, 688 F. Supp. 1425 (S.D. Cal. 1988); *Weeks v. Benton*, 649 F. Supp. 1297 (S.D. Ala. 1986), and failure to assert specific factual allegations directed toward specific defendants is grounds for dismissal of a § 1983 claim.  *See Doe v. Cassell*, 403 F.3d 986, 989-90 (8th Cir. 2005).  Moreover, even if Plaintiff had identified the specific medical providers as defendants, he has failed to state a claim upon which relief may be granted.  28 U.S.C. § 1915A(b)(1).  This claim is due to be dismissed.

## **RECOMMENDATION**

Accordingly, for the reasons stated above, the magistrate judge **RECOMMENDS** the following:

1.  The motion for summary judgment (Doc. 20) as to Defendant Gray is due to be **GRANTED**, and the claims against Defendant Gray are due to be **DISMISSED WITH PREJUDICE**;

2.  The Alabama Department of Corrections is due to be **DISMISSED** as a defendant;

3.  The motions for summary judgment (Docs. 20 and 33) as to Plaintiff's claims against Defendants Byers, MacMillan, and Bailey in their official capacities for monetary relief are due to be **GRANTED**, and such claims are due to be **DISMISSED WITH PREJUDICE**;

17

4.     The motions for summary judgment (Docs. 20 and 33) as to Plaintiff's Eighth Amendment failure-to-protect claims against Defendants Byers, MacMillan, and Bailey in their individual capacities are due to be **DENIED**, as is their attempt to invoke qualified immunity;

5.     To the extent Plaintiff was attempting to raise a claim of deliberate indifference to serious medical needs, such claim is **DISMISSED**.

## NOTICE OF THE RIGHT TO OBJECT

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. Any objections to the failure of the magistrate judge to address any facts or legal arguments also must be included. Failure to do so will bar any later challenge or review of the magistrate judge's factual findings or legal conclusions. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140(1985), *reh'g denied*, 474 U.S. 1111 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*).

To challenge the magistrate judge's factual findings or legal conclusions, a party must file with the clerk of the court written objections specifically identifying the factual findings or legal conclusions to which objection is made and the specific basis for objection. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Furthermore, it is not necessary for a party to repeat legal arguments in the objections. A copy of the objections must be served on all other parties to the action.

On receipt of objections meeting the foregoing specificity requirement, a district judge shall make a *de novo* determination of those portions of the report and recommendation to which objection is made and may accept, reject, or modify in whole or in part, the magistrate judge's factual findings or legal conclusions. The district judge, however, need conduct a hearing only in his or her discretion or if required by law, and may consider the record developed before the magistrate judge,

18

making his or her own determination on the basis of that record.  The district judge may also receive

further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Objections not meeting the foregoing specificity requirement will not be considered by a district

judge.

A party may not appeal a magistrate judge's report and recommendation directly to the

United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a district judge.

**DONE** this 11th day of July, 2014.


_____
STACI  G.  CORNELIUS
U.S. MAGISTRATE JUDGE

19